**FILED**
**CLERK**

11:28 am, May 14, 2018

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

DEASIA BATES,

                    Plaintiff,

        -against-

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                    Defendant.

--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:17-cv-03311 (ADS)

**APPEARANCES:**

**Law Offices of Joseph A. Romano**
*Attorneys for the Plaintiff*
1776 Eastchester Road Suite 220
Bronx, NY 10461
      By:    Joseph Albert Romano, Esq., Of Counsel

**United States Attorney's Office for the Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
      By:    Rukhsanah L. Singh, Assistant United States Attorney

**SPATT, District Judge**:

The Plaintiff Deasia Bates (the "Plaintiff") commenced this this civil action pursuant to the

Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the

Defendant, Nancy A. Berryhill (the "Defendant" or the "Commissioner"), the acting commissioner

of the Social Security Administration (the "Administration") at the time of filing, that she is

ineligible to receive Social Security disability insurance benefits.

Presently before the Court are the parties' cross motions. The Plaintiff has moved for

summary judgment pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 56,

and the Defendant has moved for a judgment on the pleadings pursuant to Rule 12(c). For the reasons that follow, the Plaintiff's motion is denied, and the Commissioner's motion is granted.

## I. BACKGROUND

On April 23, 2013, the Plaintiff filed for SSI benefits. She claimed that she was disabled as of March 29, 2013 due to a broken back and small intestine problems that were the result of a car accident. Following the accident, the Plaintiff underwent surgical procedures including an exploratory laparotomy; resection of a 30 cm segment of the small intestine; repair of serosal tear and sigmoid colon; evacuation of abdominal hemorrhage; and control of bleeding of the small bowel mesentery. Of note, the Plaintiff graduated for high school with an IEP (an "individualized education plan") diploma. During high school, she took special education classes.

The Plaintiff's application for SSI benefits was denied, and the Plaintiff requested a hearing before an administrative law judge.

On December 3, 2014, Administrative Law Judge Ronald L. Waldman (the "ALJ") conducted a hearing during which the Plaintiff was represented by counsel. On April 20, 2015, the ALJ conducted a supplemental hearing. The Plaintiff testified at both hearings, and a medical expert and vocational expert testified at the supplemental hearing.

On May 20, 2015, the ALJ issued a written decision denying the Plaintiff's claim.

On May 28, 2015, the Plaintiff requested that the Appeals Council review the ALJ's decision.

On September 13, 2016, the Appeals Council denied the Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

On January 11, 2016, the Plaintiff initiated the instant action. The parties' motions were fully briefed on September 5, 2017.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges presently raised by the Plaintiff. In this regard, references to the record are denoted as "R."

## II.  DISCUSSION

### A.  The Applicable Law

While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect. *See Lowry v. Astrue*, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (summary order) (applying and referencing version of regulation in effect when the ALJ adjudicated plaintiff's claim); *see also Michael Barca, Plaintiff, v. Comm'r of Soc. Sec., Defendant.*, No. 2:16-CV-187, 2017 WL 3396416, at *8 (D. Vt. Aug. 8, 2017) (applying the regulations in effect when the plaintiff filed his application); *Alvarez v. Comm'r of Soc. Sec.*, No. 14CV3542(MKB), 2015 WL 5657389, at *11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court considers the ALJ's decision in light of the regulation in effect at the time of the decision." (citing *Lowry*, 474 F. App'x at 805 n.2));

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Burgess v. Astrue*, 537 F.3d 117, 119 (2d Cir. 2008) (quoting 42 U.S.C. § 423(d)(1)(A)) (quotation marks omitted).  In addition, "[t]he impairment must be of 'such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Shaw v. Chater,* 221 F.3d 126, 131–32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

In determining whether a claimant is disabled, the Commissioner is required to apply the five-step sequential process set forth in 20 C.F.R. § 416.920. The claimant bears the burden of proving the first four steps, but then the burden shifts to the Commission at the fifth step. *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999) (analyzing the five steps laid out in 20 C.F.R. § 404.1520, which has the same framework).

First, the Commissioner considers whether the claimant is presently working in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not so engaged, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. *Id.* at § 416.920(a)(4)(ii). If the severity requirement is met, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in Appendix 1 of the regulations, or is equal to a listed impairment. *Id.* at §§ 416.920(a)(4)(iii), 416.920(d), 416.925, 416.926; 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant has such an impairment, there will be a finding of disability. If not, the fourth inquiry is to determine whether, despite the claimant's severe impairment, the claimant's residual functional capacity ("RFC") allows the claimant to perform his or her past work. 20 C.F.R. §§ 416.920(a)(4). Finally, if a claimant is unable to perform past work, the Commissioner then determines whether there is other work, such as "light work," that the claimant could perform, taking into account, *inter alia,* the claimant's residual functional capacity, age, education, and work experience. *Id.* at §§ 416.920(a)(4)(v), 416.920(g).

**B. The Standard of Review**

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the

record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (Spatt, J.) (citing *Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998)).

Thus, "the reviewing court does not decide the case *de novo*." *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id.*, and therefore, the relevant question is not "whether there is substantial evidence to support the [claimant's] view"; instead, the Court "must decide whether substantial evidence supports *the ALJ's decision.*" *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 U.S. Dist. LEXIS 21427, at *20 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

In this context, "[s]ubstantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess*, 537 F.3d at 128 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of [his or her] decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004)

(citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (holding that an ALJ's decision may be affirmed where there is substantial evidence for both sides)).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review. *See Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

## C. The Plaintiff's Arguments

The Plaintiff contends that the ALJ erred in concluding that the Plaintiff's back and mental impairments did not medically equal the impairments listed in 20 C.F.R. Part 404, Subpart B, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926); improperly weighed the medical opinion evidence; found that the Plaintiff had a residual functional capacity ("RFC") that is not supported by substantial evidence; failed to properly evaluate the Plaintiff's credibility; and improperly relied on the vocational expert's testimony. The Commissioner opposes each of these arguments.

## D. Application to the Facts

### 1. As to Whether the ALJ Erred in Concluding that the Plaintiff's Back Impairment Did not Meet or Medically Equal Listing 1.04

The Plaintiff argues that her back conditions meet or medically equal Listing 1.04. In support of this argument, the Plaintiff relies on the fact that she had pain in her lower back, exhibited signs of stenosis, and was incapable of effective ambulation. The Court finds that the ALJ did not err in finding that the Plaintiff's back conditions did not medically equal listing 1.04 because the ALJ properly found that the Plaintiff did not exhibit an inability to walk.

Appendix 1 of the regulations lays out a number of impairments which, if possessed by a claimant, renders that claimant disabled under the Act. According to the statute, the Administration "will find that [a claimant's] impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction,

and meets the duration requirement." 20 C.F.R. §416.925 (c)(3); *see also Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891, 107 L. Ed. 2d 967 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that *manifests only some of those criteria, no matter how severely, does not qualify*." (footnote omitted, emphasis added)).

An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). "The Commissioner will find that a claimant's impairment is medically equivalent to a Medical Listing if: (1) the claimant has other findings that are related to his or her impairment that are equal in medical severity; (2) the claimant has a 'closely analogous' impairment that is 'of equal medical significance to those of a listed impairment;' or (3) the claimant has a combination of impairments that are medically equivalent." *Valet v. Astrue*, No. 10-cv-3282 (KAM), 2012 WL 194970, at *13 (E.D.N.Y. Jan. 23, 2012) (quoting 20 C.F.R. § 404.1526(b)(1)–(3), which is analogous to 20 C.F.R. § 416.926(b)(1)–(3)). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531.

Here, the ALJ found, based on substantial evidence and correct legal principles, that while the Plaintiff's back impairments were severe, they did not meet or equal Listing 1.04C. To satisfy Listing 1.04C, a claimant must establish the existence of lumbar spinal stenosis resulting in pseudoclaudication with "findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 1.04C.

The ALJ found that there was "no evidence of . . . [an] inability to ambulate . . . ." (R. at 30). The Listing provides the following for guidance regarding the criteria that Plaintiff must have an "inability to ambulate effectively":

> (1) Definition: Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00B2b(1)-(2).

During the December hearing, when the Plaintiff was asked whether she used "any type of device to help [her], like a cane or a back brace," (R. at 98), the Plaintiff said that she wore a back brace every other day. That same month, Dr. David Essig ("Dr. Essig"), the Plaintiff's treating physician, did not indicate that the Plaintiff needed "to use handheld devices (cane/walker)." (*Id.* at 484). During earlier visits—on May 29, 2013, June 26, 2013, and August 21, 2013—Dr. Essig noted that the Plaintiff was walking without assistance. Similarly on July 15, 2013, during a consultative examination, Dr. Samir Dutta ("Dr. Dutta") noted that the Plaintiff did not have an assistive device, except for her back brace.

At the supplemental hearing, the ALJ asked about the Plaintiff's use of a walker, and specifically referenced the fact that the Plaintiff had not mentioned it during the initial hearing. The Plaintiff said that she had not been using the walker in December of 2014, and that she was only using the walker because she needed a new back brace. (*Id.* at 52). Therefore, by the Plaintiff's own statements, she did not need a cane or a walker when her back brace was available.

While the Plaintiff contends that a back brace should be considered an assistive device under Listing 1.00B2b, the language of the statute does not permit this. The listing specifically references "hand-held assistive device(s) that limits the functioning of both upper extremities." As a back brace is not a hand-held device, and does not limit a user's arms, it does not fall within the listing's ambit.

Therefore, the ALJ did not err in concluding that the Plaintiff's back impairments did not meet or medically equal Listing 1.04C because there is substantial evidence supporting his conclusion that the Plaintiff did not exhibit an inability to ambulate. Accordingly, the Plaintiff's motion for summary judgment on that basis is denied.

## 2. As to Whether the ALJ Erred in Concluding that the Plaintiff's Mental Impairment Did not Meet or Medically Equal Listing 12.05

In support of her claim that the ALJ should have found that her mental disabilities meet or medically equal Listing 12.05, the Plaintiff relies on the fact that she had a full scale IQ score of 58, and a Verbal Comprehension Index Score of 68. In light of those scores, the Plaintiff states that the ALJ should have found that her mental abilities meet or medically equal Listing 12.05B or 12.05C. The Court finds that substantial evidence supports the ALJ's finding that the Plaintiff does not suffer from deficits in adaptive functioning, and therefore the ALJ did not commit error.

"To satisfy Listing 12.05, the claimant must make a threshold showing that she suffers from 'significantly subaverage general intellectual functioning with deficits in adaptive

functioning.'" *Burnette v. Colvin*, 564 F. App'x 605, 607 (2d Cir. 2014) (summary order) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (further internal citations omitted)). After making this threshold showing, the Plaintiff "must *then* demonstrate '[t]he required level of severity for this disorder' under Listing 12.05(A), (B), (C), or (D)." *Id.* at 607 (emphasis added) (quoting *Talavera v. Astrue*, 697 F.3d 145, 152 (2d Cir. 2012)).

Here, as in *Burnette*, "there is substantial evidence that [the Plaintiff] did not suffer from the requisite 'deficits in adaptive functioning.'" *Id.* "Adaptive functioning refers to an individual's 'ability to cope with the challenges of ordinary everyday life.'" *Talavera*, 697 F.3d at 153(quoting *Novy,* 497 F.3d at 710 (observing that "[i]f you cannot cope with those challenges, you are not going to be able to hold down a full-time job") (internal alteration omitted).

"Factors that courts consider when evaluating a claimant's adaptive functioning include communicating and socializing with others, living on one's own, paying bills, caring for children, shopping, cooking, cleaning, driving and other activities of daily life." *Newell v. Colvin*, No. 15CIV7095PKCDF, 2017 WL 1200911, at *4 (S.D.N.Y. Mar. 31, 2017) (citing *Talavera*, 697 F.3d at 153; *Hooper v. Colvin*, 199 F. Supp. 3d 796, 811 (S.D.N.Y. 2016)).

While the ALJ did not specifically reference "adaptive functioning, in finding that the Plaintiff did not meet the requirements of (B) or (C) he said the following:

> the claimant did not have significant deficits in her ability to communicate her needs and wants[;] [] she was able to perform a full [] range of daily activities including caring for her personal needs[;] counting change and shopping[;] . . . the claimant was articulate at the hearing, engaged and fully able to answer all questions to the best of her knowledge[;] . . . the claimant was able to follow and understand simple instructions and directions[;] appropriately perform simple tasks[;] [] maintain attention and concentration; and the claimant remains able to engage in a wide range of daily activities.

(R. at 31). Therefore, the ALJ found that the Plaintiff did not suffer from deficits in adaptive functioning. *See Clark v. Colvin*, No. 6:12-CV-1507 DNH/ATB, 2013 WL 6795627, at *10

(N.D.N.Y. Dec. 18, 2013) (finding that the ALJ appropriately addressed the threshold issue of adaptive functioning because, *inter alia*, "[e]ven though the ALJ did not mention the term 'adaptive functioning,' the ALJ stated that the record showed no evidence of cognitive impairments or significant functional limitations. The ALJ cited Dr. Noia's report of July 2010, concluding that, although plaintiff had some difficulty dealing with stress, she was still able to understand and follow simple instructions and directions. (T. 24). She could perform simple and some complex tasks, with supervision and independently, maintain attention and concentration for tasks, regularly attend to a routine, maintain a schedule, learn new tasks, make appropriate decisions, and relate to and interact moderately well with others. . . . The ALJ did specifically analyze two other listed mental impairments, and many of the 'adaptive functions' are also found in the other listings.").

Substantial evidence supports the ALJ's finding. Dr. Kathleen Acer ("Dr. Acer"), who conducted a consultative psychiatric examination for the Administration, noted that the Plaintiff dresses, bathes, and grooms herself; prepares simple food; cleans her room and the bathroom; goes to the store; counts change; and shops for herself. The Plaintiff testified during the initial hearing that she socializes with her friends and goes out to fast food restaurants; cleans her room, makes the bed, and takes the garbage out; takes public transportation; watches movies; spends time with her boyfriend; attends church twice a month. As the ALJ noted, the Plaintiff was able to answer his questions clearly.

Courts have found that plaintiffs who were able to complete the above tasks, understand simple directions, and maintain relationships with others have adequate adaptive functioning. *See Talavera*, 697 F.3d at 153–54 ("Talavera exhibited a variety of personal characteristics consistent with adequate adaptive functioning, including the ability to navigate public transportation without

assistance, engage in productive social relationships, and manage her own personal finances; a facility with the use of computers; and the display of fluent speech, coherent and goal-directed thought processes, and appropriate affect. Further . . . Talavera is able to follow and understand simple directions and instructions, perform simple tasks independently, maintain her attention and concentration for simple tasks, maintain a regular schedule, if the schedule does not require complex tasks, make simple decisions, and relate adequately with others." (internal citations and quotation marks omitted)); *Warren v. Comm'r of Soc. Sec.*, No. 315CV1185GTSWBC, 2016 WL 7223338, at *5 (N.D.N.Y. Nov. 18, 2016) (finding that substantial evidence supported finding that the plaintiff had adequate adaptive functioning where "Plaintiff indicated that he was able to shop for food, pay bills, count change, and play games. Plaintiff informed the consultative examiner that he cooks, cleans, does laundry, shops once a month, showers and dresses himself daily, and listens to the radio and plays sports" (internal citations and footnote omitted)), *report and recommendation adopted sub nom. Warren v. Colvin*, No. 315CV1185GTSWBC, 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Lawler v. Astrue*, No. 3:09-CV-1405 GLS, 2012 WL 177956, at *2 (N.D.N.Y. Jan. 23, 2012) (finding that the plaintiff did not suffer from deficits in adaptive functioning where "the record shows he was able to complete several activities of daily living, including traveling alone, shopping for groceries, doing his own laundry, cleaning, preparing food, paying his bills, spending time with others, talking on the phone and visiting friends regularly"), *aff'd*, 512 F. App'x 108 (2d Cir. 2013); *Perry v. Astrue*, No. 3:11-CV-1122, 2013 WL 474849, at *3 (N.D.N.Y. Feb. 6, 2013) (ALJ properly determined Plaintiff with an IEP diploma did not have deficits of adaptive functioning were the evidence indicated she could perform activities of daily living and the basic mental demands of unskilled work).

Therefore, substantial evidence supported the ALJ's decision that the Plaintiff did not have deficits in adaptive functioning.

While the Plaintiff argues that the ALJ erred in discounting the Plaintiff's IQ scores, the Court need not reach that argument, because substantial evidence supports the finding that the Plaintiff did not meet the threshold burden of showing that she has limitation in adaptive functioning. *See Lawler*, 512 F. App'x at 110–11 ("We need not determine whether substantial evidence supports the ALJ's determination that Lawler's IQ scores were invalid, because substantial evidence does support the ALJ's additional, and dispositive, determination that Lawler does not demonstrate limitations in adaptive functioning. While the ALJ did not base her conclusion about listing 12.05 on Lawler's adaptive functioning, this determination and its corresponding support in the record renders remand futile." (citing *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 401 (2d Cir. 2005) (internal quotation marks omitted)); *Harris v. Colvin*, No. 5:15-CV-0938, 2016 WL 6426387, at *10 (N.D.N.Y. Oct. 28, 2016) ("In any event, even if the ALJ erred in assessing Plaintiff's IQ score from Dr. Shapiro, it would be harmless because substantial evidence supported the ALJ's determination that Plaintiff did not meet her threshold burden of establishing that she has deficits in adaptative functioning as required under Listing 12.05." (citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (holding that remand for error is not required when the application of the correct legal principles could only lead to the same conclusion))).

Therefore, the Court finds that the ALJ did not err in finding that the Plaintiff's mental limitations met or medically equaled Listing 12.05 because substantial evidence supports the finding that the Plaintiff does not suffer from limitations in adaptive functioning. Accordingly, the Plaintiff's motion for summary judgment on that basis is denied.

### 3. As to Whether the ALJ Erred in Assigning Weight to the Medical Opinions

The Plaintiff further contends that the ALJ erred in assigning limited weight to the medical opinions of Dr. Essig and Dr. Acer. However, the Plaintiff's arguments with regard to Dr. Acer's opinion relate to her findings regarding the Plaintiff's IQ tests. The Court addressed those arguments above, and need not address them here. Furthermore, the Plaintiff contends that it was error to assign significant weight to the opinion of the consulting physician, Dr. Donald I. Goldman ("Dr. Goldman"), an orthopedic surgeon who testified at the supplemental hearing. The Court finds that the ALJ did not err in assigning the respective weights to the opinions of Dr. Essig and Dr. Goldman.

Under 20 C.F.R. § 416.927(c) ALJs are required to weigh and evaluate "every medical opinion." When assigning weight to a medical opinion, ALJs consider the following factors: the nature of the examining relationship; whether or not the medical opinion was made by a treating source; length of treatment relationship and frequency of examination; supportability; consistency; specialization; and "other factors . . . which tend to support or contradict the opinion." 20 C.F.R. § 416.927(c); *see also Selian v. Astrue,* 708 F.3d 409, 418 (2d Cir. 2013).

Controlling weight can be given to "a treating source's medical opinion on the issue(s) of the nature and severity" of the claimant's impairments if the medical opinion is "well supported by . . . other substantial evidence . . . ." 20 C.F.R. § 416.927(c)(2). When a treating source's medical opinion is not supported by substantial evidence, the opinion will not be afforded controlling weight. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Where an ALJ declines to give controlling weight to a treating physician's opinion, he must provide "good reasons" for doing so, and must consider the above factors in determining the weight to afford to the opinion. 20 C.F.R. § 416.927(c)(2) ("When we do not give the treating source's medical opinion controlling

weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

Dr. Essig, the Plaintiff's treating physician, assessed in December 2014 that the Plaintiff was able to perform a full range of sedentary work, with one or two unscheduled breaks during the day, and up to two absences per month. In April 2015, Dr. Essig found that the Plaintiff was unable to perform sedentary work. Dr. Essig noted that the Plaintiff would need unscheduled breaks, but did not answer the question as to how often she would need breaks and how long the breaks would last. Similarly, while Dr. Essig stated that the Plaintiff would need to take days off due to her impairments, he did not answer the question asking how many days per month she would need to miss. He further stated that the Plaintiff did not have any limitations regarding the use of her upper extremities; that she did not need to elevate her legs; and that she did not require an assistive walking device.

The ALJ afforded these opinions limited weight because Dr. Essig did not offer any basis for the limitations; they contradicted one another; and they were inconsistent with his findings that the Plaintiff's condition was improving. The ALJ noted by June 2013, Dr. Essig recommended that the Plaintiff wean herself off of the back brace. In August 2013, Dr. Essig stated that the Plaintiff walked without a walker; had a normal gait; and reported that the Plaintiff related that she only had occasional lower back pain, without pain in the legs. Specifically, Dr. Essig noted that her condition continued to improve.

Dr. Essig's opinions are further contradicted by his own treatment notes. In the month following the Plaintiff's surgery, Dr. Essig recommended that the Plaintiff refrain from a number

of practices including bending, twisting, pushing and pulling, and lifting heavy objects. In subsequent notes, he did not advise her to restrict herself from these activities, and even found that the Plaintiff was able to bend, push, and pull. Furthermore, the Plaintiff reported that she could lift and carry ten pounds. On June 26, 2013, Dr. Essig noted that the Plaintiff's leg strength was intact, she had intact sensation and 1+ reflexes. Her x-rays showed that there was no obvious fracture or dislocation. Dr. Essig's findings in August 2013 were similar, and he noted that the Plaintiff continued to improve. In December 2013, the Plaintiff told Dr. Essig that she had some occasional lower back pain with increased activity, but denied having any leg pain. Dr. Essig again noted that the Plaintiff was recovering well. In January 2014, Dr. Essig's findings remained unchanged, and he noted that the Plaintiff could stand on her heels and toes, and bend her knees without difficulty. On April 2, 2014, the Plaintiff reported to Dr. Essig that she had some occasional lumbrosacal junctional pain when she stood for prolonged periods of time, such as when she cleaned the bathtub. Dr. Essig noted that the Plaintiff's complaints were not significant, and that her complaints of pain were "self-limited." R. at 465. Dr. Essig's findings of October 22, 2014 were similar to previous findings.

Courts have consistently found that an ALJ is entitled to give less weight to a treating physician's opinion where it is contradicted by his or her treatment notes. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7–8 (2d Cir. 2017) (summary order) (holding that a court can give less weight to a treating source's medical opinion where the treatment notes contradict the opinion); *Cichocki*, 534 F. App'x at 75 (holding that the ALJ was not required to give controlling weight to treating physician's medical opinion where the treatment notes contradicted that opinion); *Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (summary order) (finding that the ALJ was justified in not giving much weight to the treating physician's opinion where "[t]he ALJ

noted that [the treating doctor]'s final opinion was inconsistent with his own prior opinions and the findings of the other medical examiners, and was based on [the plaintiff]'s subjective complaints").

Furthermore, Dr. Essig's opinions were inconsistent with Dr. Goldman's testimony at the supplemental hearing. Dr. Goldman reviewed the Plaintiff's medical records, and opined at the hearing that she was limited to sitting 6 hours in an 8 hour workday; could stand or walk four to six hours per day; and could lift or carry ten to fifteen pounds. Dr. Goldman further stated that the Plaintiff should avoid cold temperatures; would have to get up and change positions; would be unable to crawl; and would have difficulty climbing and stooping. The ALJ afforded Dr. Goldman's opinion significant weight "because he reviewed the entire medical record and questioned the claimant at the hearing," and because "[h]is findings [we]re also consistent with the evidence of record.

ALJs are permitted to give consulting physicians more weight where their opinions are consistent with the evidence as a whole. SSR 96–6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). This is especially true where a consulting physician's opinion corroborates a treating physician's treatment notes. *See, e.g., Smith v. Colvin*, 17 F. Supp. 3d 260, 268 (W.D.N.Y. 2014) ("[T]he opinions of consulting sources 'may constitute substantial evidence if they are consistent with the record as a whole.'" (quoting *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005))); *Vanterpool v. Colvin*, No. 12-CV-8789 VEC SN, 2014 WL 1979925, at *16 (S.D.N.Y. May 15, 2014) (finding the ALJ did not err in affording greater weight to the opinion of the consultative physician where the opinion was more consistent with the treating physician's medical records). The ALJ was

entitled to give significant weight to Dr. Goldman's opinion because it was consistent with the record as a whole, including the treating physician's treatment notes.

Therefore, the ALJ did err in assigning little weight to Dr. Essig's opinions, or in ascribing significant weight to Dr. Goldman's opinion. Accordingly, the Plaintiff's motion for summary judgment on that basis is denied.

### 4. As to the Plaintiff's Residual Functional Capacity

As to the Plaintiff's RFC, the Plaintiff contends that the ALJ erred in failing to account for cold weather increasing the intensity and severity of her pain; the Plaintiff would experience fatigue from taking oxycodone and the challenges of a new work environment; and the Plaintiff would be unable to sit for more than four hours in an eight hour workday. The Court finds that the ALJ did not err in concluding that the Plaintiff had the RFC to perform light work.

A claimant's RFC is "the most [they] can still do despite [their] limitations. . . . [R]esidual functional capacity [is assessed] based on all the relevant evidence in [a claimant's] case record. 20 C.F.R. § 416.945(a)(1). At an administrative hearing, the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 416.946(c). While an RFC determination is, to a certain extent, a medical determination, *see Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010), the ultimate RFC determination is left to the ALJ, 20 C.F.R. § 416.946(c).

Here, the ALJ found that the Plaintiff is capable of performing light work limited to unskilled jobs with simple one or two step repetitive tasks; without crawling or exposure to heights or cold temperature; with occasional stooping; with the need to change positions every thirty to forty-five minutes; and with absences of up to one day per month. Light work is defined in the regulations as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job

is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

As to the Plaintiff's contention that the ALJ failed to account for cold weather, the ALJ's RFC specifically accounted for this by stating that the Plaintiff would have to avoid cold temperatures at her job. Additionally, there was no evidence in the record to support her claim that she would have to miss multiple days per month due to the weather. Her claims regarding the weather are based completely on her own statements. As stated below, the ALJ had reason to doubt her credibility.

While Dr. Essig originally prescribed oxycodone to the Plaintiff, he told her on several occasions that she should wean herself off of it. Furthermore, the Plaintiff told Dr. Essig that she did not take the medication every day. The Plaintiff was able to complete the daily activities listed above while on the medication. This discounts the Plaintiff's contention. *See Cichocki*, 729 F.3d at 178 (finding that the ALJ properly relied on the claimant's reported daily activities, including cleaning, which were consistent with the capacity to perform light work). Finally, while the Plaintiff testified in the supplemental hearing that the medication made her drowsy, R. at 53, she stated in the initial hearing that it did not cause any side effects, *id.* at 106. Even at that, she said that it only made her sleepy "sometimes." *Id.* at 53. Therefore, the ALJ appropriately accounted for the Plaintiff's medication and her possible fatigue.

Finally, as to the ALJ's conclusion that the Plaintiff could sit up to six hours in a day, substantial evidence also supported that finding. As stated above, Dr. Goldman, whose testimony

was afforded significant weight by the ALJ, found that the Plaintiff would be able to sit up to six hours in a day.  The ALJ's RFC matched Dr. Goldman's opinion, and the Court has already found that it was proper to afford that opinion such weight.

The Plaintiff's activities of daily living further support the ALJ's RFC determination. *Lewis*, 548 F. App'x at 677–78 ("[T]he ALJ's determination that [the plaintiff] could perform light work is supported by [the doctor]'s assessment of mild limitations for prolonged sitting, standing, and walking, and direction that Lewis should avoid heavy lifting, and carrying. It is further supported by evidence in the record regarding Lewis's daily activity." (internal citations to the record and quotation marks omitted)); *Cichocki*, 729 F.3d at 178 (finding that the ALJ properly relied on the claimant's reported daily activities, including walking her dogs and cleaning, which were consistent with the capacity to perform light work); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (observing that the claimant's varied activities, including childcare, vacuuming, dishwashing, occasional driving, and using the computer, indicated that the claimant's allegations of disabling limitations were not fully credible).

Dr. Samir Dutta, who performed a consultative examination, and whose opinion the ALJ afforded some weight, found that the Plaintiff had a mild to moderate limitation for sitting, and a moderate limitation in standing, bending, and lifting or carrying on a continuing basis.  This further supports the ALJ's RFC finding.  *See Lewis*, 548 F. App'x at 677–78 ("the ALJ's determination that [the plaintiff] could perform 'light work' is supported by [the doctor]'s assessment of 'mild limitations for prolonged sitting, standing, and walking,' and direction that Lewis should avoid 'heavy lifting, and carrying.' It is further supported by evidence in the record regarding Lewis's daily activity."); *Harrington v. Colvin*, No. 14-CV-6044, 2015 WL 790756 at *13, 14 (W.D.N.Y. Feb. 25, 2015) (finding that a medical opinion that a claimant was "moderately" limited in sitting,

standing and walking was not inconsistent with the ALJ's residual functional capacity that plaintiff could sit, stand, and walk for six hours a day); *Nelson v. Colvin*, 12-CV-1810, 2014 WL 1342964, *12 (E.D.N.Y. March 31, 2014) (stating that an ALJ's finding that a plaintiff could perform light work was supported by the doctor's opinion that the claimant had mild to moderate limitations to her ability to sit, stand and walk (citing *Lewis*, 548 F. App'x at 678)).

Therefore, the ALJ did not err in assessing the Plaintiff's RFC because his determination was based upon substantial evidence. Accordingly, the Plaintiff's motion for summary judgment on that basis is denied.

### 5. As to Whether the ALJ Erred In Relying on the Vocational Expert

As the Court has found that substantial evidence supports the ALJ's RFC finding, the Court therefore concludes that the ALJ did not err in relying on the vocational expert's opinion. The ALJ submitted a hypothetical to the vocational expert based on the above RFC, and was thus permitted to rely on the vocational expert's testimony. *See Calabrese v. Astrue*, 358 F. App'x 274, 276–77 (2d Cir. 2009) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence, and accurately reflect the limitations and capabilities of the claimant involved. Here, the hypotheticals presented to the vocational expert were premised on the ALJ's RFC assessment made at step four of the analysis.")

Accordingly, the Plaintiff's motion for summary judgment on that basis is denied.

### 6. As to the Whether the ALJ Properly Evaluated the Plaintiff's Credibility

The Plaintiff also contends that the ALJ failed to properly evaluate her credibility because he summarily found that her complaints were not credible using boilerplate language. The Court finds that the ALJ properly evaluated the Plaintiff's credibility.

"It must be emphasized that 'it is the function of the Commissioner, and not a reviewing court, to pass upon the credibility of witnesses and to set forth clearly its findings which form the basis for its decision.'" *Saviano v. Chater*, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997), *aff'd,* 152 F.3d 920 (2d Cir. 1998) (Spatt, J.) (quoting *Stupakevich v. Chater,* 907 F. Supp. 632, 637 (E.D.N.Y. 1995)); *see also Aponte v. Sec'y, Dep't of Health and Human Serv.*, 728 F.2d 588, 591 (2d Cir. 1984) ("It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." (internal quotation and editing marks and citation omitted)).

The plaintiff must bolster complaints of pain by demonstrating, through medical findings, that an underlying condition does exist and that it would be reasonably expected to produce the symptomatology alleged. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(b); 416.929(b); Social Security Ruling ("SSR") 88–13; *Gallagher v. Schweiker,* 697 F.2d 82, 84 (2d Cir. 1983). The ALJ found that there was an underlying condition, but did not believe that the condition was as severe as the Plaintiff claims.

If the claimant's symptoms indicate a more serious problem than is established by the medical evidence, other factors such as the claimant's daily activities and the location, duration, frequency, and intensity of the pain should be considered. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 88–13. As stated above, the medical evidence and the Plaintiff's daily activities supported the ALJ's finding that the Plaintiff's condition is not as severe as she claims. *See Poupore*, 566 F.3d at 307 (observing that the claimant's varied activities, including childcare, vacuuming, dishwashing, occasional driving, and using the computer, indicated that the claimant's allegations of disabling limitations were not fully credible); *Alcantara v. Astrue,* 667 F. Supp. 2d 262, 276 (S.D.N.Y. 2009) (ALJ must take subjective complaints into account only "to the extent

that they are consistent with objective medical evidence").  In addition, the Plaintiff's testimony apparently changed between the two hearings.  For instance, at the initial hearing, she did not reference a walker or a cane, and said that her medication did not cause side effects, while in the supplemental hearing, she said that she had to use a walker when she did not have her back brace, and said that the medication made her tired.

Furthermore, as discussed above, her reported activities of daily living belied her claims relating to the persistence and intensity of her impairments.  In the Court's view, the ALJ properly evaluated the Plaintiff's subjective complaints in light of the other evidence in the record.  *See Snell*, 177 F.3d at 135 ("Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings.").  Therefore, the ALJ had reasons to doubt the Plaintiff's credibility. In sum, the Court finds that the ALJ's decision was supported by substantial evidence.

Accordingly, the Plaintiff's motion for summary judgment on the basis that the ALJ improperly assessed her credibility is denied.

## III.  CONCLUSION

For the reasons stated above, the Plaintiff's motion for summary judgment pursuant to Rule 56 is denied in its entirety, and the Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) is granted in its entirety.

The Clerk of the Court is respectfully directed to close the case.

It is **SO ORDERED:**

Dated: Central Islip, New York

   May 14, 2018

                            ____/s/ Arthur D. Spatt____

                            ARTHUR D. SPATT

                            United States District Judge